FOSTER *v.* CITY OF MERIDIAN.*

(Division B. April 16, 1928. Suggestion of Error Overruled May 21, 1928.)

[116 So. 820. No. 27094.]

---

*Corpus Juris-Cyc. References: Accord and Satisfaction, 1CJ, p. 530, n. 84; p. 582, n. 33; Appeal and Error, 3CJ, p. 747, n. 19; 4CJ, p. 1050, n. 85; Pleading, 31Cyc, p. 764, n. 13; Trial, 38Cyc, p. 1618, n. 36; p. 1789, n. 17; Effect of failure to perform act required by new agreement as affecting character thereof as accord and satisfaction, see annotation in 10 A. L. R. 222; 14 A. L. R. 230; L. R. A. 1915B, 59; 1 R. C. L. 199; 1 R. C. L. Supp. 62; 4 R. C. L. Supp. 11; 5 R. C. L. Supp. 7.

*Reily & Parker,* for appellant.

*Amis, Dunn & Snow,* for appellee.

720

ANDERSON, J. Appellant brought this action in the circuit court of Lauderdale county against appellee to

recover damages for an injury suffered by appellant, alleged to have been caused by the negligence of appellee. There was a trial, resulting in verdict and judgment for appellee. From that judgment, appellant prosecutes this appeal.

Appellant received the injury for which she sued at the intersection of Fifth street, running east and west, with Twenty-Seventh avenue, running north and south, in the city of Meridian. Appellant was the guest of her daughter, in the latter's automobile, which was being driven by the daughter. They were driving east on Fifth street, and as their car approached the intersection of Fifth street with Twenty-Seventh avenue, there was approaching said intersection, coming from the south on the latter street, a cinder wagon belonging to appellee, drawn by mules and being driven by one of appellee's employees. The wagon was heavily loaded with cinders which were being used by the city, in part, in building and repairing its streets and alleys, and this particular load was being transported by appellee, through its employee, for that purpose. At the intersection of these two streets, there was a collision between the automobile in which appellant and her daughter were riding, and the cinder wagon. The tongue of the cinder wagon struck the automobile under the rear seat, resulting in the car being damaged, and appellant being injured.

Appellee defended upon two grounds: (1) That the proximate cause of appellant's injury was the negligence of the driver of the automobile in which appellant was traveling, and not the negligence of appellee. (2) That before the bringing of this action, appellant and appellee compromised and settled whatever cause of action appellant had against appellee on account of said collision, by virtue of an agreement, the terms of which were that appellee would pay, and appellant would accept, the sum of three hundred dollars, in full payment and satisfaction of said alleged cause of action.

The questions for decision on appeal arise out of the latter ground of defense.

Besides the general issue and notice thereunder, that appellee would show that the proximate cause of appellant's injury was the negligence of the driver of the automobile in which appellant was traveling, the appellee interposed two special pleas, in each of which it was averred, in substance, that appellant was not entitled to recover anything for her injuries, because, after such injuries occurred, and before the bringing of this action, the appellant and appellee had compromised and settled whatever cause of action the former had against the latter, growing out of said collision, by appellee offering to pay, and appellant agreeing to accept, the sum of three hundred dollars.

Without demurring to these two special pleas on the ground of their insufficiency in law, appellant took issue thereon. Appellant now contends that neither of these pleas set up any defense to her cause of action, known to the law. The view we take renders it unnecessary to decide whether appellant's contention in that respect is well founded, or not, for, as we shall undertake to show later on, regardless of whether the special pleas set up a good defense, it devolved upon appellee to prove a good defense, which it failed to do.

To establish accord and satisfaction between appellee and appellant, the former introduced the mayor of Meridian, W. H. Owen, who testified as follows:

"Q. Now, did you have any conversation with Mrs. Foster and her husband, when they were together about any proposed settlement? A. Yes, sir. Q. When and where was that? A. In the reception hall of the Foster home on 41st avenue, between Fifth and Paulding streets, on the morning of November 25, 1926. Q. Now, who was present at the time that you had that conversation with Mrs. Foster in their home on the morning of November 25th? A. Mr. and Mrs. Foster and myself. Q.

Now, state just what happened there, or what was said, if anything? Just go along and state what happened there in that reception hall that morning. A. Mr. Foster said that he did not want a lawsuit. His wife said 'No, we don't want any; we want to settle,' and I said, 'All right, I am ready to settle with you this morning, but I will expect you and Mr. Foster to both sign a release.' We agreed on the price of three hundred dollars. I told them I would go immediately— Q. State what was said—what you said and what they said? A. I told them I would give them three hundred dollars. Q. You told them you would give them three hundred dollars, or the city would give them three hundred dollars? A. I told them I would, that I was representing the city. That is my recollection of it. Q. Well, after you made the offer of three hundred dollars, what, if anything, did either or both of them say? A. She said that she would accept it. I told them that I would go immediately and get it. Q. What did Mrs. Foster say? A. She said, 'Not to-day, for Mr. Foster had to go out right now.' She said, 'Bring it here day after to-morrow morning at 9 o'clock,' and I left. Q. What, if anything, did Mr. Foster say when you made this offer of three hundred dollars. A. He said they would sign the papers. Q. What, if anything was said by Mrs. Foster about when you would bring the money there? A. I was to bring it there day after to-morrow morning at 9 o'clock. Q. Now, Mr. Owen, did you or not ever go back out there? A. Yes, sir, I went on the morning of the 27th at 9 o'clock. Q. What did you have with you when you went out there? A. The city's check for three hundred dollars. Q. Did you have any other papers? A. I had a release drawn for them to sign. Q. And you had the check that was drawn at that time? A. Yes, sir. Q. Is this the city check? 'A. Yes, sir. Q. When was that check drawn with reference to the time you went out to Mrs. Foster's home? A. It was drawn that morn-

ing before I went to Mrs. Foster's home. Q. Who was the city clerk and treasurer of the city of Meridian? A. W. H. White. Q. And who was city clerk and treasurer at that time, on the 27th of November, 1926? A. Mr. W. H. White. Q. And who was mayor? A. I was. Q. Is this the check that you carried there with you, or not? A. Yes, sir. Q. Now, Mr. Owen, did you or not see Mr. or Mrs. Foster that morning when you went there? A. No, sir, neither one of them. Q. Who did you see, and what occurred? Tell what occurred. A. I knocked on the door, and some lady came to the door, and I did not know who she was. She asked me, just said, 'what is it,' and I told her that I would like to see Mrs. Foster, and she went into the room, and in a moment came back and says, 'Mrs. Foster cannot see you; she is sick.' Q. Well, what else, if anything? A. I told her that I had an appointment with her that morning to settle with her on account of her injury, and she came back and said that Mr. Foster was not there and that I would have to come again. Q. Did you hear Mrs. Foster say anything? A. No, sir, I don't think I did. Q. You did not see Mrs. Foster? A. No, sir. Q. You don't know whether she was there or not, of your own knowledge? A. No, sir. Q. State to the court and jury whether or not the city has been, at all times, since then, ready and willing to pay three hundred dollars? A. Yes, sir. Q. In settlement of this claim? A. Yes, sir.''

Appellant denied, on the witness stand, that any such compromise took place as was testified to by the mayor.

To constitute a bar to an action on the original claim or demand, the accord must be fully executed, unless the agreement or promise, instead of the performance thereof, is accepted as satisfaction. If the compromise promise or agreement, itself, and not its performance, is accepted in satisfaction and extinction of the demand, it is good as an accord and satisfaction without perform-

ance. But if the parties contemplate that performance of the contract shall be a discharge of the original demand, the mere agreement does not constitute an accord and satisfaction—the performance is necessary to complete it. *Whitney* v. *Cook,* 53 Miss. 551; *Y. & M. V. R. R. Co.* v. *Fulton,* 71 Miss. 385, 14 So. 271; and 1 C. J. section 17, page 530.

We think it very plain from Owen's testimony that the parties to the alleged compromise settlement did not contemplate that the compromise agreement or accord should, itself, have the effect of satisfying and discharging appellant's cause of action. But, on the contrary, they contemplated actual payment to appellant of the three hundred dollars, and execution by her and her husband of a written release of appellee from further liability. In other words, Owen's testimony means that there was an accord between the parties, and that the accord contemplated satisfaction the second day thereafter before the accord should be binding. There was not a substitution of a new obligation in the place of the old. The old obligation was left standing, and was not to be discharged until the new obligation was fully performed by payment of the money by the appellee, and execution of a written release by appellant and her husband.

Appellee takes the position, however, that if it did fail to prove an accord and satisfaction, such failure cannot be charged against it, because it proved the allegations of its special pleas setting up that defense; that, under the law, it was not required to do more; that under the statute of jeofails, section 808, Code of 1906, section 610, Hemingway's 1927 Code, the appellant having taken issue on the special pleas, instead of demurrer thereto, waived their insufficiency, and, therefore, will not be heard to say either that they presented no defense to the action, or that the evidence introduced by appellee to sustain the special pleas fell short of proving a defense

to the action. In other words, appellee's contention is that appellant having taken issue on the special pleas setting up accord and satisfaction as a defense, will not now be heard to say that either those pleas, or the proof thereunder, were insufficient in law to establish that defense. The statute of jeofails follows:

"A judgment shall not be stayed or reversed, after verdict, for any defect in the writ, or for a variance in the writ from the declaration or other proceedings; or for any misleading, insufficient pleading, discontinuance, misjoining of issue, failure to join issue, or lack of warrant of attorney; or for the appearance of either party, being under the age of twenty-one years, by attorney, if the verdict be for him and not to his prejudice; or for not alleging any deed, letters testamentary, or for administration, to be brought into court; or for the omission of the words 'with force and arms,' or 'against the peace;' or for any misstatement of the Christian name, or surname of either party, sum of money, quantity of merchandise, day, month, or year, in the declaration or pleading the name, sum, quantity, value or time being right in any other part of the record or proceedings; or for the omission of the averment, 'this he is ready to verify,' or 'this he is ready to verify by the record;' or for not alleging 'as appeareth by the record;' or for omitting the averment of any matter without proving which the jury ought not to have given such verdict; or for setting forth by way of recital any matter which ought to have been set forth by averment; or for not alleging that the suit or matter is within the jurisdiction of the court; or for not alleging that the property in the declaration mentioned is the property of the plaintiff; or for any mistake or misconception of the form of the action, or for any other defect or form in the declaration or pleading; or for any informality in entering the judgment. Neither shall judgment by default be reversed, nor a judgment after inquiry of damages be stayed or reversed, for any

omission or fault which would not have been good cause to stay or reverse the judgment if there had been a verdict on issue joined.''

We think the converse of appellee's contention is true. That is, that the statute of jeofails cured whatever defects there were in appellee's special plea, but did not supply the necessary evidence to establish such pleas. This, the appellee was required to do, whether the defense was well pleaded or not. The statute of jeofails cures false pleading, but not the lack of evidence to establish true pleading. To illustrate: A sues B on an alleged cause of action; B interposes a plea to A's declaration that presents no defense thereto under the law. A fails to challenge the sufficiency in law of B's plea. Does B make out his defense, under the law, by proving the allegations of such a plea? We think not. The statute of jeofails was not intended to cure errors and defects of that character. *Holmes* v. *Preston,* 70 Miss. 152, 12 So. 202; and *Reaves* v. *Dennis,* 6 Smedes & M. 89.

Appellee contends that appellant is not in a position to raise this question because she failed to make specific objection to Owen's testimony. Appellant did make only a general objection to Owen's testimony. There was no attempt by appellant in her objection to point out the ground upon which she claimed the testimony was not admissible. It was held by this court in *Bessler Movable Stairway Co.* v. *Bank of Leakesville,* 140 Miss. 537, 106 So. 445, that a general objection to evidence overruled by the trial court would not be considered on appeal, unless it was apparent that such evidence had no probative value on any material issue in the cause. Owen's testimony proved no defense under the law. It fell short of that as we have held above. It had no bearing on any material issue of the cause. Therefore, it was not good in part and bad in part, but was all bad. It had no place in the case at all. We think appellant's general objection to the testimony was sufficient.

Furthermore, appellant asked for an instruction which was refused by the court, which action of the court is assigned as error by appellant, to the effect that the jury should disregard the alleged compromise settlement as a defense to this cause. This instruction should have been given, and it was harmful error to refuse it. It follows, of course, that it was error for the court to give the various instructions asked and given for appellee, submitting to the jury, for their consideration, the alleged compromise settlement.

After appellant's instruction, in which she sought to have the court tell the jury to disregard the alleged compromise settlement, was refused by the court, appellant asked and received one or more instructions, in each of which that question was submitted to the jury. We do not think that was a condonement of the action of the court in giving instructions for appellee submitting the question of the compromise settlement to the jury. Appellant had done all she could to keep this question from the jury, except to demur to appellee's two special pleas setting up the compromise settlement as a defense. She had objected to the evidence offered by the appellee to establish the special pleas, which objection had been, by the court, overruled, and then, at the conclusion of the evidence, she had sought to have the court instruct the jury to disregard the alleged compromise settlement.

Appellant then yielded, as she had to do, to the ruling of the court, and embodied in some of her instructions given by the court the principle to which she had so strenuously objected.

We know of no authority which holds that by so doing she lost her rights.

We see no reversible error in the other instructions given appellee.

*Reversed and remanded.*